# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SemCrude, L.P.,** *et al.*, | Case No. 08-11525 (BLS) |
| Reorganized Debtors. | (Jointly Administered) |
| **New Dominion, LLC,** | Adv. No. 11-51774 |
| Plaintiff, | Related to Adv. Docket Nos. 97, 143, 144, 146, 147, 158, 159 |
| v. | |
| **J. Aron & Company,** | |
| Defendant. | |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO 28 U.S.C. § 157(C)(1) AND FED. R. BANKR. P. 9033(A)

Before the Court is the Motion for Partial Summary Judgment (the "Partial MSJ") filed by New Dominion, LLC ("ND")[1] and the Renewed Motion for Summary Judgment (the "MSJ") filed by J. Aron & Company ("J. Aron").[2] The parties are more than familiar with the complex background of this bankruptcy case and family of adversary proceedings. As relevant here, ND sold oil to SemCrude[3] who promptly sold that oil to third parties. ND was not paid in full for the oil it sold to SemCrude between June 1 and July 1, 2008. ND argues that SemCrude (or one of its affiliates) sold at least some of that oil to J. Aron, and ND asserts a security interest and lien on the proceeds thereof under Oklahoma law. ND commenced this litigation to

---

[1] Adv. Docket No. 143.
[2] Adv. Docket No. 146.
[3] Capitalized terms used in this introduction are defined *infra*.

foreclose upon its asserted lien. By J. Aron's MSJ, J. Aron seeks a ruling from this Court that it purchased oil from the Debtors free and clear of any liens or other rights of ND. As set forth in detail below, the Court finds that ND sold its oil to SemCrude pursuant to standard industry terms that provide a warranty that the oil was sold free and clear of all liens, claims and encumbrances. Accordingly, ND waived its right to assert any lien in the oil it sold. The Court will therefore recommend that J. Aron's MSJ be granted.

## I. BACKGROUND[4]

On July 22, 2008 (the "Petition Date"), SemGroup, L.P. and certain direct and indirect subsidiaries (collectively, "SemCrude" or the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Code"). By Order dated October 28, 2009 (the "Confirmation Order"),[5] the Court confirmed the Debtors' Fourth Amended Joint Plan of Affiliated Debtors (the "Plan").[6] The Plan and the Confirmation Order expressly preserved certain claims and causes of action and provided for this Court's retention of jurisdiction over those claims, including ND's claims currently before the Court in this adversary proceeding.[7]

As of the Petition Date, the Debtors' business involved purchasing oil and gas from upstream producers, like ND (collectively, the "Producers") and selling it to downstream purchasers, like J. Aron (collectively, the "Downstream Purchasers"). After the bankruptcy filing, many Producers were owed millions of dollars for oil and gas

---

[4] The general background is detailed at length in the Court's Proposed Findings of Fact and Conclusions of Law [Adv. No. 09-50038], *In re SemCrude, L.P., et al.*, 504 B.R. 39 (Bankr. D. Del. 2013), regarding the motions for summary judgment filed by J. Aron and other Downstream Purchasers vis-à-vis the other producers in these adversary proceedings. Additional background specific to this adversary proceeding is provided in the Court's Proposed Findings of Fact and Conclusions of Law regarding New Dominion's pre-discovery Motion for Partial Summary Judgment. Therefore, the Court recites here only those facts relevant to ND's Partial MSJ and J. Aron's MSJ. *See Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 82, 88-93 (Bankr. D. Del. 2009) (describing SemCrude's business operations and financial collapse).
[5] Docket No. 6347.
[6] Docket No. 6329.
[7] *See* Confirmation Order ¶¶ 65-67.

delivered to the Debtors in the weeks leading up to the filing.[8] ND claimed that it was not paid in full for more than 22,000 barrels of oil, worth roughly $2.75 million, that it provided to SemCrude between June 1 and July 1, 2008.[9] Each of ND's contracts with SemCrude governing the oil sales expressly incorporated the Conoco General Provisions, which include a warranty that the oil was delivered "free from all…liens [and] encumbrances."

J. Aron purchased over 24 million barrels of oil from SemCrude, priced at approximately $324 million, for delivery in Cushing, Oklahoma and El Dorado, Kansas in June 2008.[10] On July 21, 2008, the day before SemCrude filed its bankruptcy petition, J. Aron exercised netting rights under its ISDA Master Agreement to set off $435 million of oil purchased from SemCrude against approximately $345 million in SemCrude's oil derivatives trading obligations.[11]

Shortly after the Petition Date, ND, an Oklahoma-based company, filed liens under the Oklahoma Oil and Gas Owners' Lien Act, Okla. Stat. Ann. tit. 52, §§ 548.1-548.6 (the "Oklahoma Oil & Gas Lien Act").[12] This statute granted Producers like ND "a lien upon the oil or gas severed [from its wells], or the proceeds of sale if such oil or gas has been sold, to the extent of [its] interest until" full payment is received. Okla. Stat. Ann. tit. 52, § 548.2. On August 4, 2008, ND notified J. Aron that it had filed liens on the proceeds of its oil allegedly held by J. Aron.[13]

---

[8] Over one thousand producers had not been paid for oil and gas product delivered between June 1, 2008 and July 21, 2008. The total production that the Debtors purchased, but did not pay for, was valued in excess of four hundred million dollars. *See generally* Schedules & Statements of Fin. Affairs for SemCrude, L.P. [Docket No. 1805].

[9] ND Mot. for Summ. J. and Br. in Support ¶ 1 & Ex. B (collecting run tickets totaling over $2.75 million for June 2008); ND Br. in Support of Mot. for Partial Summ. J. 1 ("ND Br.").

[10] ND Br. ¶ 2; *See* J. Aron Mem. 6 Ex. D (collecting confirmations memorializing J. Aron's purchases of oil from SemGroup in June and July of 2008).

[11] ND Br. in Support of Mot. for Partial Summ. J. 4 (Sept. 28, 2012).

[12] In 2010, the Oklahoma legislature repealed the Oklahoma Oil & Gas Lien Act and replaced it in full with a new act. *See* Okla. Stat. Ann. tit. 52, §§ 549.1-549.12. Since ND filed suit against J. Aron in 2008, the now-repealed statute applies, and is discussed here.

[13] *Id.* Ex. C.

ND filed suit in Oklahoma state court asserting a single count against J. Aron to foreclose on the alleged statutory lien.[14] The matter was eventually transferred to the District of Delaware, and then referred to this Court.

The record reflects that ND was paid in full for oil delivered between July 2, 2008 and July 21, 2008 pursuant to the administrative priority provisions of 11 U.S.C. § 503(b)(9). Additionally, ND was paid approximately 13% of its sales to SemCrude from June 1, 2008 to July 1, 2008 through a settlement agreement with the Debtors and the secured lenders.[15] The issue before the Court at this stage, therefore, is whether ND possesses lien rights that it can assert against J. Aron to recover on the portion of its claim that was not paid by the Debtors.

## II. JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), with the Court determining that this matter is "related to" the Debtors' Chapter 11 cases. Venue is proper in this Court and in this District pursuant to 28 U.S.C. §§ 1408, 1409. These adversary proceedings constitute non-core proceedings under 28 U.S.C. § 157(c)(1). *See Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re SemCrude, L.P.)*, 442 B.R. 258, 271 (Bankr. D. Del. 2010). As such, and in accordance with Fed. R. Bankr. P. 9033(a), the Court herewith files its proposed findings of fact and conclusions of law.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in favor of that party, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Any doubt must be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party carries its burden, the opposing party must go beyond the pleadings and identify specific facts showing more than a "mere existence of a scintilla of evidence" that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 252; *see also Matsushita Elec. Indus. Co.*,

---

[14] ND Resp. to J. Aron MSJ Ex.C [Adv. No. 09-50038, Docket No. 383]. at ¶ 7.
[15] *See* J. Aron Mem. in Support of MSJ 5 n.11 (citing Buxton Dep. Tr.) [Adv. Docket No. 147].

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts").

When ruling on cross-motions for summary judgment, the Court's analysis does not change. "Each party still bears the initial burden of establishing a lack of genuine issues of material fact." *Liquidating Trust of U.S. Wireless Corp. v. Huffman (In re U.S. Wireless Corp.)*, 386 B.R. 556, 560 (Bankr. D. Del. 2008). Each motion must be considered independently, and "both motions will be denied if any genuine issues of material fact exist." *WM Inland Adjacent LLC v. Mervyn's LLC (In re Mervyn's Holdings, LLC)*, Adv. No. 09-50920(KG), 2013 WL 85169, at *3 (Bankr. D. Del. Jan. 8, 2013) (citation omitted).

## IV. THE PARTIES' POSITIONS

J. Aron's MSJ asserts numerous arguments for dismissing ND's claims. As a threshold matter, J. Aron contends that no lien rights can be asserted against it where (i) ND sold oil to the Debtors under an express warranty, and (ii) the Debtors sold oil to J. Aron under an identical warranty. Additionally, J. Aron asserts that ND cannot show through the extensive discovery already completed that J. Aron ever received any of ND's oil. In fact, the uncontested facts adduced through discovery show that SemCrude transported and sold 97% of the oil in question to Conoco, not to J. Aron. J. Aron states that ND has failed to show that J. Aron ever received any of the remaining oil.

In response, ND contends that its free-and-clear warranty does not preclude assertion of its lien, since its lien rights only arose later, when the Debtors failed to pay for the oil. Thus, ND asserts it cannot have waived rights it did not possess at the time of sale. ND argues that tracing the oil is not required under Oklahoma law, and that its perfected liens trump J. Aron's setoff rights. ND cites to case law, U.C.C. § 9-336, and the apparent intent of the Oklahoma legislature for the proposition that "Oklahoma applies the confusion of goods doctrine to products such as crude oil," allowing ND's statutory lien to attach to the whole commingled mass of oil held by SemCrude, irrespective of actual tracing.[16]

## V. LEGAL ANALYSIS

The record reflects, and it is undisputed, that ND sold its oil to SemCrude pursuant to contracts incorporating express warranties that the oil was free of all security interests. All of ND's contracts with the

---

[16] ND Br. in Support of Partial MSJ 2-4 (Sept. 28, 2012).

- 5 -

Debtors reference the Conoco General Provisions.[17] The Conoco General Provisions include the following term: "[t]he Seller warrants good title to all crude oil delivered hereunder and warrants that such *crude oil shall be free from all royalties, liens, encumbrances* and all applicable foreign, federal, state and local taxes."[18] Therefore, not only did J. Aron receive an express warranty from the Debtors that the oil was free and clear of all security interests, but ND also expressly warranted that the oil it sold to SemCrude was free from all liens and encumbrances pursuant to the same warranty in the Conoco General Provisions. This Court has previously stated that:

> any Producers who sold oil under an express warranty that the oil was free of all liens and encumbrances have effectively waived any statutory security interest in the oil sold. *See ITT Fin. Servs. v. Schoenlein (In re Schoenlein)*, 157 B.R. 824, 827-28 (Bankr. N.D. Ohio 1993) (noting that a creditor cannot claim a security interest in a television if it has previously disclaimed all security interests in that television).[19]

Having expressly warranted that the oil it sold was free from all liens, ND cannot now enforce its liens against J. Aron.

ND argues that it could not have waived a right that had not yet accrued. As cited by ND, Oklahoma law provides that waiver is a voluntary relinquishment of a known right. S*ee Faulkenberry v. Kansas City S. Ry. Co.*, 602 P.2d 203, 206-07 (Okla. 1979). In the present case, the record reflects that ND sold oil to the Debtors in full expectation that the Debtors would promptly sell that oil downstream. And indeed, the record further reflects that the Debtors did just that, selling the oil under contracts that again warranted to the buyer that the oil was free and clear of all liens.

ND's position is that its lien only arose weeks or months after the sale to the Debtors, when payment for the oil was due and not made. Accordingly, ND reasons that its express warranty was accurate at the time of sale, but is no bar to assertion of the lien due to the subsequent payment default.

This Court respectfully disagrees. Any right that ND may have had to assert a lien in its oil was waived when the oil was sold under

---

[17] J. Aron Br. in Support of MSJ 13.
[18] Conoco General Provisions ¶ B (emphasis added).
[19] *In re SemCrude, L.P.*, 504 B.R. at 60, n.66.

the express warranty embodied in the Conoco General Provisions. It cannot be revived and asserted against subsequent purchasers at a later point in the event of a payment default by the first purchaser: this proposition is entirely inconsistent with the legal intent and effect of a warranty of good title, and wholly impractical in the context of the energy market.[20]

Accordingly, the record reflects that there is no genuine dispute of material fact that J. Aron obtained oil from SemCrude free and clear of any lien or other encumbrance. J. Aron is entitled to summary judgment in its favor.

## VI. CONCLUSION

For the foregoing reasons, the Court recommends that ND's Partial MSJ be denied, and J. Aron's MSJ granted.[21]

BY THE COURT:

Dated: January 17, 2018

Brendan Linehan Shannon
Chief United States Bankruptcy Judge

---

[20] *See In re SemCrude, L.P.*, 864 F.3d at 280, 301 (3d Cir. 2017) ("The Producers' contention that a lien or trust follows oil from their wells to the gas pump does not make sense for this type of market. The effect of any opinion from us upholding the Producers' position would be chaos.").

[21] J. Aron raised and briefed a host of independent arguments in its request for summary judgment. Because the Court concludes that the express warranty given by ND is fatal to its lien claim, the Court does not reach J. Aron's other arguments.